# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 18, 2008        Decided April 14, 2009

No. 07-5379

FRANK D. WUTERICH,
APPELLEE

v.

JOHN MURTHA, CONGRESSMAN, AND
UNITED STATES OF AMERICA,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 06cv01366)

*Darrell C. Valdez*, Assistant U.S. Attorney, argued the cause for appellants. With him on the briefs were *Gregory G. Katsas*, Assistant Attorney General, U.S. Department of Justice, *Jeffrey A. Taylor*, U.S. Attorney, *Thomas M. Bondy*, Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

*Mark S. Zaid* argued the cause for appellee. With him on the brief was *Bradley P. Moss*.

Before: HENDERSON and ROGERS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  This case involves an important question concerning the scope of *absolute immunity* under the Westfall Act.  *See* 28 U.S.C. § 2679.  The Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties."  *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)).  "When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'  Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee."  *Id.* at 229-30 (quoting 28 U.S.C. § 2679(d)(1), (2)).

In this case, U.S. Marine Frank D. Wuterich sued Congressman John Murtha, alleging that the Congressman made false and defamatory statements to the press about the role of Wuterich's squad in the deaths of civilians in Haditha, Iraq in 2005.  Congressman Murtha invoked the protections of the Westfall Act and the Attorney General's designee certified that the Congressman was acting within the scope of his employment at the time he uttered the contested statements.  The District Court denied the Government's certification pending Wuterich's discovery on the scope-of-employment issue.  Wuterich's discovery demands included a several hour deposition of the Congressman and 25 document production requests.  Congressman Murtha and the United States now appeal the District Court's denial of the Attorney General's certification.

In *Osborn*, the Supreme Court held that a defendant in a Westfall Act case may seek immediate review of a district court's denial of a Westfall Act certification because such a decision "effectively denie[s]" the employee immunity from suit.  549 U.S. at 238.  Because the District Court's denial of

certification pending discovery effectively denied Congressman Murtha the absolute immunity from suit guaranteed him by the Westfall Act, this court has jurisdiction to hear this appeal. It is no answer that the District Court merely reserved judgment on certification pending discovery. The law is clear that limited discovery is permitted in a Westfall Act case only when a plaintiff "allege[s] sufficient facts that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment." *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003). Because Wuterich has failed to meet even this minimal pleading burden, we vacate the District Court's order denying certification pending discovery and remand the case with instructions to the District Court to substitute the United States as the defendant in place of Congressman Murtha. Because the United States has not waived its sovereign immunity for Wuterich's tort claims, the District Court will be required to dismiss his complaint for lack of subject matter jurisdiction.

## I. BACKGROUND

Frank D. Wuterich is a Staff Sergeant in the U.S. Marine Corps, who in November 2005 led a squad stationed in Iraq. On November 19, 2005, a roadside bomb detonated in the city of Haditha, killing a member of Wuterich's squad. In the fighting that followed, two dozen Iraqi civilians were killed.

On August 2, 2006, Wuterich filed suit against John Murtha, the Congressman from Pennsylvania's Twelfth Congressional District and then-Ranking Member of the House Appropriations Committee's Subcommittee on Defense, for libel, invasion of privacy/false light, and republication of defamatory statements by third parties. According to Wuterich, Congressman Murtha gave a series of interviews to the media in the wake of the Haditha incident, during which he made defamatory comments about the role of Wuterich's squad in the deaths of the Iraqi civilians. Wuterich specifically alleges that

Congressman Murtha was one of several Members of Congress briefed on the ongoing investigation into the deaths at Haditha in the spring of 2006 and that, based on inaccurate information learned during these briefings, Congressman Murtha made statements about the Marines involved in the incident to National Public Radio and CNN, among other media outlets. Wuterich further alleges that Congressman Murtha's statements to the press "provide the impression, implicitly or explicitly, that SSgt Wuterich and others deliberately murdered innocent Iraqi civilians in a cold-blooded massacre" and "inappropriately compared the tragic events of Haditha with the infamous war crimes and deliberate wide-spread massacre of civilians at My Lai in Vietnam." Compl. ¶¶ 24, 20. In addition, Wuterich claims that Congressman Murtha's "comments were made outside of the scope of his employment as a U.S. Congressman and [were] intended to serve his own private purposes and interests." *Id.* ¶ 23.

On May 7, 2007, the Attorney General's designee invoked the Westfall Act and certified that "United States Congressman John Murtha was acting within the scope of his employment as an employee of the United States at the time of the alleged incidents." Westfall Certification (May 7, 2007), *reprinted in* Joint Appendix ("J.A.") 138. Upon filing the certification, the United States and Congressman Murtha moved to substitute the United States as the defendant and to dismiss the case for lack of subject matter jurisdiction because the United States had not waived sovereign immunity for Wuterich's tort claims. *See* Mot. to Substitute Def. and Dismiss for Lack of Subject Matter Jurisdiction (May 7, 2007), J.A. 30-47; 28 U.S.C. § 2680(h) (excepting "[a]ny claim arising out of . . . libel [or] slander" from the federal government's waiver of sovereign immunity). Along with this motion, the United States and Congressman Murtha submitted a declaration from Congressman Murtha's former Communications Director Cynthia Abram, who stated that three of the media interviews were taped in Pennsylvania

when the Congressman "was in his congressional district during a district work period." Abram Decl. ¶ 5 (May 2, 2007), J.A. 60. The Abram declaration stated that the interviews were not campaign related and explained that they were conducted in Congressman Murtha's campaign office because that office was easily accessible to the broadcasters. *Id.*, J.A. 60-61.

At the September 28, 2007 hearing on the Government's motion, Wuterich's counsel asserted to the District Court that he had alleged sufficient facts to rebut the Government's certification and to obtain discovery, including a deposition of Congressman Murtha and "five or so document production requests." Mot. Hr'g Tr. 25-26 (Sept. 28, 2007), J.A. 332-33. In particular, Wuterich's counsel noted that he had learned just that morning from a potential witness that Congressman Murtha was "personally offended" that then-Secretary of Defense Donald Rumsfeld had refused to meet with him and was using the Haditha comments to "embarrass" Rumsfeld. *Id.* at 24-25, J.A. 331-32.

At the close of the hearing, the following exchange took place:

> THE COURT: I am unable at this stage to know exactly where the lines should be drawn. . . . I would be personally much more comfortable if I knew a few more of the facts so that I could write a decision that distinguished those facts to say okay, here's this line and here's this line. . . . And I think I need to let the plaintiff at least take limited discovery, totally limited to scope of employment. Not anything else. Not anything else. Just scope of employment. That is a deposition from the Congressman and some document requests. I think we can limit it to that.

> GOVERNMENT: Your Honor, I understand that's where you're going. But I would say that in order to do that, Your

Honor, the law requires you to find that he has alleged facts to create a material dispute.

THE COURT: Well, I'll find that he has alleged, *not in the complaint*, but here he has alleged facts that Congressman Murtha was not acting in a, as he did in order to advance his legislative agenda or his desire to withdraw the troops but instead harping on Haditha as a way to embarrass the Secretary of Defense. Whether that's within a Congressman's scope of employment is also arguable.

*Id.* at 33-34, J.A. 340-41 (emphasis added). In a minute order entered the day of the hearing, the District Court reiterated that plaintiff could "conduct discovery limited to the issue of whether Congressman Murtha was acting in the scope of his employment at the time he made the alleged defamatory statements." Minute Entry Order, *Wuterich v. Murtha*, No. 06-cv-01366 (D.D.C. Sept. 28, 2007), J.A. 4.

Following the hearing, Wuterich noticed Congressman Murtha's deposition and served 25 document production requests "seeking each and every document relating or referring to the incident at Haditha, as well as each and every document relating or referring to every conversation Congressman Murtha had with any person regarding the incident at Haditha." Order at 3 n.1, *Wuterich v. Murtha*, No. 06-cv-01366 (D.D.C. Dec. 17, 2007) (citation omitted), J.A. 304. On November 16, 2007, Congressman Murtha and the United States appealed the District Court's denial of the Attorney General's certification and several days later moved to stay the order pending appeal. On December 17, 2007, the District Court granted the stay, recognizing that once Congressman Murtha "submits to the deposition ordered by this Court, his appeal of that order may become moot." *Id.* at 3-4, J.A. 304-05.

## II. ANALYSIS

### A. *The Westfall Act Framework*

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn*, 549 U.S. at 229 (citing 28 U.S.C. § 2679(b)(1)). The Westfall Act's "core purpose," as the Supreme Court has explained, "is to relieve covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the Government's shoulders." *Id.* at 252. In pertinent part, the Westfall Act provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). Thus, when a federal employee is named in a tort suit, the Attorney General or his designee may certify that the employee was "acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Id.*; *see also* 28 C.F.R. § 15.4. Upon the Attorney General's certification, the federal employee is dismissed from the case and the United States is substituted as the defendant in place of the employee. 28 U.S.C. § 2679(d)(1). Thereafter, the suit is governed by the Federal Tort Claims Act ("FTCA") and is subject to all of the FTCA's exceptions for actions in which the Government has not waived sovereign immunity. *Osborn*, 549 U.S. at 230. When one of these exceptions applies, the

Attorney General's certification converts the tort suit into a FTCA action over which the federal court lacks subject matter jurisdiction and has the effect of altogether barring plaintiff's case.

A plaintiff may contest the Attorney General's scope-of-employment certification before a district court. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995) (holding that scope-of-employment certification is subject to judicial review). Once a plaintiff advances this argument, the certification "constitute[s] *prima facie* evidence that the employee was acting within the scope of his employment." *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (per curiam). To rebut the certification and obtain discovery, a plaintiff must "alleg[e] sufficient facts that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment." *Stokes*, 327 F.3d at 1215. If a plaintiff meets this pleading burden, he may, if necessary, attain "limited discovery" to resolve any factual disputes over jurisdiction. *Id.* at 1214, 1216.

This court has made it clear that "[n]ot every complaint will warrant further inquiry into the scope-of-employment issue." *Id.* at 1216. Consequently, where a plaintiff fails to allege sufficient facts to rebut the certification, the United States must be substituted as the defendant because the federal employee is absolutely immune from suit. The parties agree that if the certification is not successfully rebutted in this case, Wuterich's action must be dismissed because his claims fall within the FTCA's exception for claims "arising out of . . . libel [or] slander." 28 U.S.C. § 2680(h). *See* Appellee's Br. at 23 n.8 (noting that upon substitution "[t]he case would then proceed under the FTCA, which confers immunity to the Government for claims of libel and slander"); Appellants' Br. at 10 (same); Mem. of Law in Support of Pl.'s Opp'n to Mot. to Substitute Def. and Dismiss for Lack of Subject Matter Jurisdiction at 10

(June 8, 2007) ("Wuterich agrees that if the United States is properly substituted as the defendant in place of Mr. Murtha, his lawsuit stops there."), J.A. 149.

## B. *The Jurisdiction of This Court*

Wuterich contends that we lack jurisdiction over this appeal, because the District Court's denial of certification pending discovery is not a "final decision" under 28 U.S.C. § 1291. We disagree.

In this case, appellate jurisdiction to review the District Court's denial of certification pending discovery arises pursuant to the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546-47 (1949). Under the collateral order doctrine, an interlocutory order qualifies as "final" under § 1291 if it "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (bracketed numbers in original) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).

Application of the collateral order doctrine to the District Court's denial of certification is controlled by the Supreme Court's decision in *Osborn v. Haley*, 549 U.S. 225 (2007). In *Osborn,* the Court held that the denial of a Westfall Act certification by a district court, like the denials of various other immunity defenses, is an immediately appealable collateral order. 549 U.S. at 238; *see also Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 141 (denial of claim of Eleventh Amendment immunity immediately appealable); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (same for qualified immunity); *Nixon v. Fitzgerald*, 457 U.S. 731, 742-43 (1982) (same for absolute presidential immunity); *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004) (same

for foreign sovereign immunity); *United States v. Rostenkowski*, 59 F.3d 1291, 1297 (D.C. Cir. 1995) (same for Speech or Debate Clause immunity). The *Osborn* Court explained that the denial of certification qualified for collateral order review because it

> effectively denied [the defendant] the protection afforded by the Westfall Act, a measure designed to immunize covered federal employees not simply from liability, but from suit[;] . . . conclusively decided a contested issue[;] the issue decided is important and separate from the merits of the action[;] and the District Court's disposition would be effectively unreviewable later in the litigation.

*Osborn*, 549 U.S. at 238 (citing *Cohen*, 337 U.S. at 546). In other words, by erroneously permitting the plaintiff to proceed against an absolutely immune official, the district court's order "subjects the employee to the burden of defending a suit, a burden from which the Westfall Act spares him." *Id.* at 238-39 (citation, brackets, and ellipsis omitted).

The District Court's order denying certification pending discovery is not materially distinguishable from the order at issue in *Osborn*. First, by authorizing discovery notwithstanding Congressman Murtha's claim that he was acting within the scope of his employment, the order conclusively determined that the Congressman was not entitled to invoke the protections of the Westfall Act to avoid discovery. In addition, by "effectively den[ying]" Congressman Murtha the absolute immunity from suit guaranteed by the Westfall Act, the order resolved an important issue separate from the merits of Wuterich's defamation case. *Id.* at 238. Finally, if Wuterich is erroneously permitted to depose Congressman Murtha and conduct document discovery, the District Court's order will be effectively unreviewable on appeal from a final judgment. *See id.* at 252 (noting that the "core purpose" of the Westfall Act "is to relieve covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the

Government's shoulders"). As the Court has recognized, a rejection of even a qualified immunity plea is immediately appealable because that defense entitles government officials "not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery . . . , as [i]nquiries of this kind can be particularly disruptive of effective government." *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (alterations in original) (internal quotation marks and citations omitted). This principle has even stronger force in the present case, since the Westfall Act confers *absolute*, not merely qualified, immunity upon federal employees acting within the scope of their official duties.

Moreover, the fact that the District Court denied the Government's certification *pending discovery* in no way limits Congressman Murtha's right to seek appellate review. As noted above, there is no right to even limited discovery in a Westfall Act case unless and until a plaintiff alleges sufficient facts to rebut the Government's certification. *See Stokes*, 327 F.3d at 1215-16; *see also Rasul v. Myers*, 512 F.3d 644, 662 (D.C. Cir. 2008), *vacated and remanded on other grounds*, 129 S. Ct. 763 (2008) ("[D]iscovery is not warranted if the plaintiff did not allege any facts in his complaint or in any subsequent filing . . . that, if true, would demonstrate that [the defendant] had been acting outside the scope of his employment.") (first alteration added) (internal quotation marks omitted) (citing *Stokes*, 327 F.3d at 1216). As explained below in Part C, Wuterich clearly has failed to meet even this minimal burden. Because the District Court's decision to deny certification was premised on an erroneous ruling that Wuterich was entitled to discovery, the decision effectively denied Congressman Murtha the absolute immunity to which he was entitled. Therefore, under *Osborn*, we have jurisdiction to hear this appeal.

**C.** ***Plaintiff Has Failed To Allege Sufficient Facts That, Taken As True, Would Establish That Congressman Murtha Was Acting Outside the Scope of His Employment When He Made the Allegedly Defamatory Statements***

The Government argues that the District Court erred in concluding that Wuterich alleged sufficient facts to establish that Congressman Murtha was acting outside the scope of his employment at the time he made comments about the deaths in Haditha. The District Court's legal conclusions regarding the sufficiency of Wuterich's allegations on the scope-of-employment issue are subject to *de novo* review. *Ballenger*, 444 F.3d at 664. Moreover, in evaluating Wuterich's claim, the court must accept Wuterich's factual allegations as true and construe the complaint liberally in his favor in accordance with the standard of Federal Rule of Civil Procedure 8(a). *Stokes*, 327 F.3d at 1211, 1215; *see also* FED. R. CIV. P. 8(a)(2).

To determine whether an employee was acting within the scope of his employment under the Westfall Act, courts apply the *respondeat superior* law of the state in which the alleged tort occurred. *Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008). District of Columbia law, which the parties agree applies in this case, defines the scope of employment in accordance with the RESTATEMENT (SECOND) OF AGENCY (1958) ("RESTATEMENT"). *Ballenger*, 444 F.3d at 663 (citing *Moseley v. Second New St. Paul Baptist Church*, 534 A.2d 346, 348 n.4 (D.C. 1987)). The Restatement provides:

> Conduct of a servant is within the scope of employment if, but only if:
>
> > (a) it is of the kind he is employed to perform;
> >
> > (b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

RESTATEMENT § 228(1). "[T]he test for scope of employment is an objective one, based on all the facts and circumstances." *Ballenger*, 444 F.3d at 663 (alteration in original) (quoting *Weinberg v. Johnson*, 518 A.2d 985, 991 (D.C. 1986)).

The parties also agree that Pennsylvania law might apply to statements made by Congressman Murtha when he was at his district office in Pennsylvania. But they agree that the scope-of-employment inquiry is substantially the same in Pennsylvania and the District of Columbia, because Pennsylvania law also incorporates the RESTATEMENT standard. *See, e.g.*, *Shuman Estate v. Weber*, 419 A.2d 169, 173 (Pa. Super. Ct. 1980) (outlining scope-of-employment inquiry and citing RESTATEMENT § 228); *see also* Appellants' Br. at 12 n.2; Appellee's Br. at 43 n.26.

Wuterich argues that Congressman Murtha's statements to the media fell outside the scope of his employment because they were neither conduct "of the kind he is employed to perform," RESTATEMENT § 228(1)(a), nor were they "actuated, at least in part, by a purpose to serve the master," *id.* § 228(1)(c). Wuterich alleged in his complaint that Congressman Murtha's "comments were made outside of the scope of his employment as a U.S. Congressman and [were] intended to serve his own private purposes and interests." Compl. ¶ 23. Wuterich additionally maintained at the motion hearing before the District Court that Congressman Murtha's comments fell outside the scope of his official duties because they were intended to embarrass Defense Secretary Rumsfeld. Taken together and generously construed under the liberal pleading standard of Rule

8(a), Wuterich has failed to allege facts that, taken as true, establish that Congressman Murtha's actions exceeded the scope of his employment.

The analysis of Wuterich's allegations is controlled by this court's decision in *Council on American Islamic Relations v. Ballenger*, 444 F.3d 659 (D.C. Cir. 2006). In that case, the Council on American-Islamic Relations sued Congressman Cass Ballenger for defamation and slander after Congressman Ballenger remarked that the organization was the "fund-raising arm for Hezbollah" during a conversation with a reporter about his separation from his wife. *Id.* at 662. The Government certified that Congressman Ballenger was acting within the scope of his employment. The parties conducted limited discovery which was not an issue on appeal. *See id.* at 663, 665; *Council on Am. Islamic Relations, Inc. v. Ballenger*, 366 F. Supp. 2d 28, 30 (D.D.C. 2005). The District Court upheld the Government's Westfall Act certification and dismissed the case. *Ballenger*, 444 F.3d at 663-64. In affirming the District Court, this court explained that the proper test under RESTATEMENT § 228(1)(a) is whether the "[underlying conduct] – not the allegedly defamatory sentence – was the kind of conduct Ballenger was employed to perform." *Id.* at 664.

Applying this test, the court in *Ballenger* held that the Congressman's conduct was of the kind he was employed to perform, because "[s]peaking to the press during regular work hours in response to a reporter's inquiry falls within the scope of a congressman's 'authorized duties.'" *Id.* Further, the court was quite clear in stating that, even though the allegedly defamatory statement was made in the course of a conversation about Congressman Ballenger's marital difficulties, his "conduct was motivated – at least in part – by a legitimate desire to discharge his duty as a congressman" within the meaning of RESTATEMENT § 228(1)(c). *Id.* at 665. This was so, the court explained, because a congressman's "ability to do his job as a

legislator effectively is tied, as in this case, to the Member's relationship with the public and in particular his constituents and colleagues in the Congress." *Id.* Thus, the court found that there was a "clear nexus between the congressman answering a reporter's question about the congressman's personal life and the congressman's ability to carry out his representative responsibilities effectively." *Id.* at 665-66.

Applying the teachings of *Ballenger* to this case, it is clear that Wuterich has not alleged any facts that even remotely suggest that Congressman Murtha was acting outside the scope of his employment when he spoke about the Haditha incident. As in *Ballenger*, the underlying conduct – interviews with the media about the pressures on American troops in the ongoing Iraq war – is unquestionably of the kind that Congressman Murtha was employed to perform as a Member of Congress. This is especially true in the case of Congressman Murtha, who was the Ranking Member of the Appropriations Committee's Subcommittee on Defense and had introduced legislation to withdraw American troops from Iraq. *See* H.R.J. Res. 73, 109th Cong. (2005) ("The deployment of United States forces in Iraq, by direction of Congress, is hereby terminated and the forces involved are to be redeployed at the earliest practicable date."). Indeed, where comments made in the course of a conversation on as private a matter as marital status are within the scope of a congressman's official duties, it is hard to fathom how Congressman Murtha's discussion of grave public policy concerns relating to the war in Iraq could ever fall outside the scope of his employment. *See Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995) (holding that a congressman's allegedly defamatory remarks during an interview about an appropriations bill were within the scope of his employment and noting that "[b]esides participating in debates and voting on the Congressional floor, a primary obligation of a Member of Congress in a representative democracy is to serve and respond to his or her constituents").

In concluding that discovery nonetheless was necessary in this case, the trial judge stated that she was "unable at this stage to know exactly where the lines should be drawn" and "would be personally much more comfortable if [she] knew a few more of the facts" before ruling on the certification. Mot. Hr'g Tr. 33, J.A. 340. When subsequently pressed by the Government that she needed to make a finding on the sufficiency of Wuterich's allegations *before* permitting discovery, the trial judge first stated that Wuterich's "complaint" was *insufficient* to support a claim that the Congressman was acting outside the scope of his employment. *Id.* However, the trial judge then pointed to Wuterich's post-complaint allegation that Congressman Murtha was "harping on Haditha as a way to embarrass the Secretary of Defense," *id.* at 34, J.A. 341, as if to suggest that, if true, this allegation might be enough to show that the Congressman was acting outside the scope of his employment. But Wuterich's claim that Congressman Murtha desired to "embarrass" Defense Secretary Rumsfeld, even if true, surely would not take his actions outside the scope of his employment.

As this court emphasized in *Ballenger*, "The Restatement's text reveals that even a *partial* desire to serve the master is sufficient." 444 F.3d at 665 (citing RESTATEMENT § 228(1)(c)). It then explained that a congressman's "ability to do his job as a legislator effectively is tied, as in this case, to the Member's relationship with the public and in particular his constituents and colleagues in the Congress." *Id.* Attacking the credibility of Defense Secretary Rumsfeld, the man who was the public face of the war in Iraq, was likewise part and parcel of Congressman Murtha's job as a legislator charged with overseeing military affairs and of his efforts to serve his constituents by advancing legislation to bring home American troops stationed in Iraq.

Also instructive on this point is the court's recent Westfall Act decision in *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008). In *Wilson*, the court upheld the District Court's ruling that

defendant Bush Administration officials had acted within the scope of their employment when they disclosed to the media the previously covert agent status of Valerie Plame Wilson, whose husband Joseph C. Wilson IV had been an outspoken critic of the administration's approach to intelligence issues. *Id.* at 703, 712. Rejecting plaintiffs' claim that the defendants exceeded the scope of their employment when they "spoke to the press in order to diffuse Joseph Wilson's criticism of the Executive's handling of pre-war intelligence," the court explained that "[o]f course, the defendants may discredit public critics of the Executive Branch." *Id.* at 712 (alteration in original) (citations omitted). Congressman Murtha's alleged attempts to discredit Defense Secretary Rumsfeld's management of the war in Iraq, no less than the comments of the Bush Administration officials in the *Wilson* case, were directly tied to his congressional political agenda and thus cannot support a claim that the Congressman acted outside the scope of his employment.

His complaint lacking, Wuterich's discovery demands appear to be nothing more than a fishing expedition for facts that *might* give rise to a viable scope-of-employment claim. Wuterich admitted as much in his brief before this court and at oral argument, when he argued that discovery was necessary to allow him to ascertain each and every person who Congressman Murtha spoke to about the Haditha incident over a several week period: "Was [Congressman Murtha] talking to fundraisers? Was he talking to staff? . . . Was he talking to neighbors? Who was he talking to over this course of time?" Oral Arg. Tr. 20 (Nov. 18, 2008); *see also* Appellee's Br. at 34 n.19 ("The facts that *would* be adduced through discovery *could* significantly impact a future scope of employment determination, i.e., to whom Mr. Murtha spoke, where he spoke and his motive for speaking.") (emphases added). Discovery of this sort – by intuition or pursuant to a witch hunt – simply has no place in a Westfall Act absolute immunity case. As our Westfall Act cases make abundantly clear, "Not every complaint will warrant

further inquiry into the scope-of-employment issue." *Stokes*, 327 F.3d at 1216. And there is no right to even "limited discovery" unless a plaintiff has made allegations sufficient to rebut the Government's certification. *Id.* at 1214, 1216; *see also Wilson,* 535 F.3d at 712 n.2 (affirming District Court's ruling that discovery "is not warranted to determine precise times and locations of the defendants' conversations with the press"). Allowing discovery in the *absence* of such allegations – as the District Court did in this case – turns this standard on its head.

Faced with similarly broad discovery requests that threatened to impinge upon an official's immunity, this court has even gone so far as to grant mandamus relief, a remedy that is reserved for "only exceptional circumstances amounting to a judicial 'usurpation of power.'" *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)). For example, in *In re Papandreou*, 139 F.3d 247 (D.C. Cir. 1998), this court issued a writ of mandamus and vacated the District Court's discovery order requiring high-ranking Greek government officials to undergo depositions aimed at evaluating their foreign sovereign immunity defense. *Id.* at 249-50, 256. While emphasizing that mandamus is a "drastic," remedy, *id.* at 250 (citation omitted), this court nonetheless found that it was warranted "[b]ecause sovereign immunity is an immunity from suit, [and] a district court authorizing discovery to determine whether immunity bars jurisdiction must proceed with circumspection, lest the evaluation of the immunity itself encroach unduly on the benefits the immunity was to ensure," *id.* at 253 (internal citation omitted). Explaining that "oral deposition of cabinet-level officials is quite unusual," this court concluded that "absent some showing of need for oral testimony from the [officials], the district court erred in authorizing their depositions." *Id.* at 253, 254.

Another example is seen in the *en banc* court's decision in *In re Cheney*, 406 F.3d 723 (D.C. Cir. 2005). *In re Cheney* involved suits filed by two nonprofit organizations against the Vice President and other government officials, alleging that the National Energy Policy Development Group was subject to the Federal Advisory Committee Act's ("FACA") disclosure requirements. *Id.* at 725-27. The District Court had largely rejected the Government's motion to dismiss pending discovery that this court described as "overly broad" and "unbounded in scope." *Id.* at 727 (quoting *Cheney*, 542 U.S. at 386, 388). The *en banc* court granted a writ of mandamus and ordered the case dismissed, because the plaintiffs had failed to state a claim for relief under FACA. *Id.* at 728-31. Importantly, *In re Cheney* unequivocally rejected the plaintiffs' pleas for discovery in order to find facts that would lend credence to their complaint.

In sum, because Wuterich has failed to "alleg[e] sufficient facts that, taken as true, would establish that [Congressman Murtha's] actions exceeded the scope of [his] employment," *Stokes*, 327 F.3d at 1215, we vacate the District Court's order.

### III. CONCLUSION

For the foregoing reasons, we hereby vacate the District Court's order denying certification pending discovery and remand the case with instructions to the District Court to substitute the United States as the defendant in place of Congressman Murtha. Because the FTCA excepts tort claims "arising out of . . . libel [or] slander," 28 U.S.C. § 2680(h), from the Government's sovereign immunity waiver, Wuterich's case is barred by sovereign immunity. Accordingly, the District Court will be required to dismiss the case for lack of subject matter jurisdiction.