**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2225
_____

JUSTIN SHARRATT,

Appellant

v.

JOHN MURTHA, in his individual capacity;
UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civil Action No. 3:08-cv-00229)
District Judge: Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 12, 2011

Before:  SMITH, FISHER, and GARTH, <u>Circuit Judges</u>

(Opinion filed: July 14, 2011)

_____

OPINION OF THE COURT
_____

GARTH, <u>Circuit Judge</u>.

        Appellant Justin Sharratt, a Marine who served in Iraq, brought suit against

Congressman John Murtha for statements Murtha had made to the press relating to

1

Sharratt and other Marines' culpability for the deaths of several Iraqis in 2005. The District Court permitted the United States to substitute itself as sole defendant as to Sharratt's common-law claims, and dismissed Sharratt's complaint in its entirety. For the reasons that follow, we will affirm the judgment of the District Court.

## I.

On November 18, 2005, Marine Lance Corporal Justin Sharratt and seven other U.S. Marines serving in Iraq were involved in a clash with Iraqis in the city of Haditha. The "Haditha incident" resulted in the deaths of fifteen Iraqis.

Beginning in May 2006, United States Congressman John Murtha, representative of Pennsylvania's 12th Congressional District and then-Ranking Member of the House Appropriations Committee's Subcommittee on Defense, made a number of statements to the national media regarding the Haditha incident. For example, Murtha claimed that he had information from "the highest level of the Marine Corps" that the Marines had "overreacted because of the pressure on them and killed innocent civilians in cold blood." (App. 32.) He also remarked that comparing the Haditha incident to My Lai -- the 1968 massacre of Vietnamese citizens by U.S. soldiers -- was "a fair analogy, except for the numbers." (App. 33.) Murtha's public statements were broadcast on national television and radio stations, including CNN and NPR, and reprinted in several newspapers.

On December 21, 2006, the U.S. Military charged Sharratt with three counts of unpremeditated murder under the Uniform Code of Military Justice. Following an Article 32 hearing -- the military analog to a civilian grand jury hearing -- the charges

2

against Sharratt were dismissed for lack of evidence, and Sharratt was exonerated. Six of the seven other Marines involved in the Haditha incident have also been absolved of wrongdoing; charges against the seventh, Staff Sergeant Frank Wuterich, are still pending.

On April 15, 2009, Sharratt filed a six-count amended complaint against Murtha in the U.S. District Court for the Western District of Pennsylvania. Counts I-III, which were styled as claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleged violations of Sharratt's constitutional rights to due process and equal protection under the Fifth Amendment (Counts I and III), and of his purported rights to a fair trial and a presumption of innocence under the Sixth Amendment (Count II). Counts IV-VI alleged liability for common-law torts, i.e., slander per se, false light, and intentional infliction of emotional distress, respectively.

On April 21, 2009, the United States moved to substitute itself as the sole defendant on Sharratt's common-law claims pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"), 28 U.S.C. § 2679. In compliance with the requirements of the Westfall Act, the U.S. Department of Justice issued a certification stating that Murtha was acting within the scope of his federal employment when making the comments giving rise to Sharratt's common-law causes of action. See 28 U.S.C. § 2679(d)(1). Murtha and the United States then moved to dismiss Sharratt's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6).

3

The District Court initially entered an order granting the motion for substitution on June 3, 2009, but permitted Sharratt to file a motion for reconsideration. On reconsideration, in a Memorandum Opinion and Order dated July 13, 2009, the District Court ordered that the substitution remain in effect. In addressing Sharratt's arguments against substitution, the District Court considered whether Murtha had been acting within the scope of his employment as defined by the Restatement (Second) of Agency, which Pennsylvania law follows. Based on the three-pronged standard of the Restatement, the District Court concluded that (1) "[s]peaking to the press is part of a congressman's employment," (2) Murtha did not speak "outside of any time or space limit that may exist for a congressman," and (3) Murtha's statements were "actuated, at least in part, by a purpose to serve the master" in that "they concerned a policy matter of our Government." (App. 14-15.) The District Court also noted that Sharratt's complaint was materially indistinguishable from that which Wuterich had filed in response to Murtha's comments on the Haditha incident, and that the U.S. Court of Appeals for the District of Columbia Circuit had held that the United States was permitted to substitute itself as defendant to Wuterich's cause of action. See Wuterich v. Murtha, 562 F.3d 375 (D.C. Cir. 2009).

On March 26, 2010, the District Court granted Murtha's and the United States' motions to dismiss.[1] With respect to Sharratt's Bivens claims, the District Court held that Murtha was entitled to qualified immunity because Sharratt did "not state the violation of

_____

[1] Congressman Murtha died on February 8, 2010, while his motion to dismiss was still pending.

4

any constitutional claims, let alone any rights that are clearly established." (App. 24.) In the alternative, the District Court concluded that the Bivens claims were time-barred. The District Court then dismissed Sharratt's common-law tort claims against the United States on jurisdictional grounds because Sharratt had not exhausted the administrative remedies prescribed under the Westfall Act.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1367.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citation and internal quotation marks omitted). However,  "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" as bona fide factual material. Id.

## A.

Although Sharratt's complaint alleged Bivens claims under the Fifth Amendment and the Sixth Amendment, Sharratt has waived his Fifth Amendment arguments by declining to raise them on appeal.  Accordingly, we only review his Bivens claim pertaining to the Sixth Amendment.

In Bivens, the Supreme Court held that a plaintiff can recover money damages from the federal government for injuries resulting from a violation of his Fourth

5

Amendment rights. 403 U.S. at 397. While the holding of <u>Bivens</u> has been expanded to permit claims for damages under the Fifth Amendment, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228, 248-49 (1979), and the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14, 23 (1980), since <u>Carlson</u>, the Supreme Court has "consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants," <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 68 (2001).

We doubt that a purported violation of Sixth Amendment rights could be remedied under <u>Bivens</u>. But even assuming that a cognizable <u>Bivens</u> cause of action exists, Sharratt would need to defeat Murtha's claimed entitlement to qualified immunity. To rebut Murtha's assertion of qualified immunity, Sharratt must 1) sufficiently plead a violation of a constitutional right and 2) demonstrate that such right was "clearly established" at the time of Murtha's alleged misconduct. <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 815-16 (2009) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).

Sharratt alleges that Murtha violated his rights under the Sixth Amendment[2] by depriving him of his "presumption of innocence" and causing him to "experience[] great stress, distress, anxiety and worry that he would be convicted of murder because of Murtha's slanderous conclusory statements that Sharratt was a 'cold-blooded murderer.'" (Appellant's Br. at 14.) However, Sharratt has cited no case law suggesting that the right he asserts indeed exists or that he could recover on such a theory under the Sixth

---

[2] In relevant part, the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI.

6

Amendment. In any event, to establish a Sixth Amendment violation, a plaintiff must show that the government's conduct had "[a]n adverse impact on the criminal proceedings." United States v. Morrison, 449 U.S. 361, 367 (1981). That Sharratt suffered no such prejudice in the Article 32 proceedings is evidenced by the fact that all of the charges against him were dismissed.

Having determined that no constitutional violation had been adequately pled, the District Court was not obligated to consider whether such right was clearly established when Murtha made the offending comments. Therefore, we conclude that Murtha was entitled to qualified immunity on this claim, which the District Court then properly dismissed. As a result, we need not address the District Court's alternate holding that Sharratt's Bivens claims were barred by the statute of limitations.

**B.**

For the purposes of a Westfall Certification, "the question whether an employee was acting within the scope of employment given a particular set of facts is a question of law subject to plenary review." Aliota v. Graham, 984 F.2d 1350, 1358 (3d Cir. 1993) (citation omitted). When the District Court determines that it lacks jurisdiction, "we exercise plenary review over [its] legal conclusions and review [its] findings of fact for clear error." Anselma Crossing, L.P. v. U.S. Postal Serv., 637 F.3d 238, 239-40 (3d Cir. 2011) (citation omitted).

The relevant subsection of the Westfall Act describes Westfall Certifications as follows:

7

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).

To determine whether the government employee was acting within the scope of his employment when he partook in the challenged conduct, a court must consult the relevant state law of respondeat superior. See Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000). As noted above, Pennsylvania has adopted the Restatement's formulation of that standard, which considers conduct to be within the scope of employment if "'(a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master . . . .'" Id. (quoting RESTATEMENT (SECOND) AGENCY § 228).

Sharratt contends that he rebutted the government's Westfall Certification by pleading sufficient facts to establish that Murtha acted outside the scope of his employment. The plaintiff in Wuterich made the same argument in respect of Murtha's statements, but the D.C. Circuit rejected it. In applying the Restatement's "scope of employment" test, the D.C. Circuit concluded, first, that Murtha's "underlying conduct -- interviews with the media about the pressures on American troops in the ongoing Iraq war -- is unquestionably of the kind that Congressman Murtha was employed to perform as a Member of Congress," and particularly so because he was "Ranking Member of the

8

Appropriations Committee's Subcommittee on Defense and had introduced legislation to withdraw American troops from Iraq." Wuterich, 562 F.3d at 384-85. Second, the court held that Murtha made the comments out of an interest in serving the public -- even if he was partially motivated by an alleged desire to embarrass then-Defense Secretary Rumsfeld -- because impugnment of "the man who was the public face of the war in Iraq[] was likewise part and parcel of Congressman Murtha's job as a legislator charged with overseeing military affairs and of his efforts to serve his constituents by advancing legislation to bring home American troops stationed in Iraq." Id. at 385.[3]

Sharratt attempts to distinguish his complaint from Wuterich's by asserting that he, unlike Wuterich, pled sufficient facts to establish that Murtha was acting beyond the scope of his employment. Sharrat pled, in particular:

a) Murtha's statements related to a matter exclusively concerning the Executive Branch, not the Legislative Branch;

b) no other Members of Congress made statements about the criminal investigation following the Haditha incident;

c) no Senators made such statements;

d) the statements were also quasi-judicial in nature, since they effectively found Sharratt guilty of murder;

e) the statements were "utterly outrageous";

f) even if Murtha had legitimate aims, his means of achieving them were "completely outrageous";

---

[3] In Wuterich, as here, the plaintiff did not dispute that Murtha had made the statements within a congressman's "authorized time and space limit."

9

g) Murtha's constituents never gave him authority to comment on on-going criminal investigations conducted by the Executive Branch;

h) Murtha's false imputation of criminal liability to a U.S. Marine constituted "willful misconduct";

i) Murtha violated Sharratt's rights under the Sixth Amendment;

j) Murtha violated Sharratt's rights under the Fifth and Fourteenth Amendments;

k) Murtha's behavior was "completely irresponsible and unreasonable"; and

l) "[i]t is wholly foreign to employment as a member of the Legislative Branch to make conclusory statements of fact about an on-going criminal investigation conducted by the Executive Branch."[4]

(App. 39-40.) Each of those allegations appears to address only the first prong of the scope of employment test, i.e., whether commenting on the Haditha investigation is the sort of conduct that a congressman "is employed to perform."

Upon reviewing each of the individual allegations, we agree with the District Court that subparagraphs e, f, g, h, i, j, and k consist of the precise sort of bare conclusory assertions "devoid of further factual enhancement" that cannot survive a motion to dismiss. Iqbal, 129 S.Ct. at 1949 (citation and internal quotation marks omitted).

Subparagraphs a, d, and l, which allege that Murtha improperly interfered with the other two branches of government, are similarly deficient. Even assuming that Sharratt has pled enough factual matter to sustain those allegations, it is plain that Murtha's comments addressed a subject that is appropriate for a member of the Legislative Branch

---

[4] Although the complaint also included a subparagraph (m), Sharratt omitted that subparagraph from both his appellate-brief discussion and attached appendix. Therefore, we decline to address it.

to broach. As the D.C. Circuit observed in <u>Wuterich</u>, "interviews with the media about the pressures on American troops in the ongoing Iraq war[] [are] unquestionably of the kind that Congressman Murtha was employed to perform as a Member of Congress," especially for a legislator with such a substantial role in determining defense spending. 562 F.3d at 384-85; <u>see also</u> <u>Williams v. United States</u>, 71 F.3d 502, 507 (5th Cir. 1995). Moreover, it is beyond peradventure that a congressman does not require explicit permission from his constituents each time he seeks to opine on an issue of public importance. We therefore conclude that Sharratt failed to plead a plausible claim that Murtha's comments on the Haditha incident exceeded the scope of Murtha's employment.

Sharratt's remaining allegations relate to the fact that Murtha was the only Member of Congress to comment on the criminal investigation following the Haditha incident, which -- according to Sharratt -- indicates that discussing that topic was not within the scope of a congressman's employment. However, the District Court properly labeled that argument a "non sequitur" because "[t]he absence of comment on an issue does not prove that comment on that same issue is outside of the duties of a congressman," and "there is nothing in the Constitution or federal statutes that requires politicians to speak out on an issue." (App. 15.) Simply because other legislators chose not to comment on the Haditha incident investigation does not mean that Murtha acted unlike a legislator by taking a vocal stance on the issue.

Finally, Sharratt maintains that the question of whether an employee acts outside the scope of employment under Pennsylvania law is a question reserved for the jury, and

therefore, should not be disposed of at the pleadings stage.  However, the government rightly responds that none of the cases on which Sharratt relies involved Westfall Act substitutions for federal employees.  Instead, in the context of Westfall Certifications, this Court has recognized that "a jury trial on the issue would frustrate Congress' intent to protect federal employees from the uncertain and intimidating task of defending suits that challenge conduct within the scope of their employ," and thus, a court can rule on the certification without conducting discovery or a hearing.  Schrob v. Catterson, 967 F.2d 929, 935-36 (3d Cir. 1992) (citation and quotation marks omitted).  We accordingly may resolve the scope of employment issue as a matter of law.

We hold that Sharratt failed to plead enough facts to rebut the government's Westfall Certification.  The reasons given by the D.C. Circuit in support of permitting the United States to substitute itself for Murtha in Wuterich apply with equal force here.  Therefore, the District Court properly allowed the United States to interpose itself as sole defendant in this matter.

## C.

As a result of the substitution of the United States as sole defendant on the Sharratt's common-law claims, the District Court was obligated to dismiss those claims for lack of jurisdiction.  As a "jurisdictional prerequisite[]" to bringing suit against the United States under the Federal Tort Claims Act, of which the Westfall Act is part, a claimant "must have first presented the claim, in writing and within two years after its

12

accrual, to the appropriate federal agency, and the claim must have been denied." Deutsch

v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995) (citing 28 U.S.C. §§2401(b), 2675(a)).

Sharratt concedes that he did not file an administrative claim before initiating this suit, but contends that he did not need to satisfy that prerequisite because he sued Murtha, not the United States.  His position is without merit, however, because 28 U.S.C. § 2976(d)(1) expressly provides that a civil action commenced against a federal employee "shall be deemed against the United States" upon issuance of a Westfall Certification. Following certification, Sharratt's common-law claims were thus properly construed as "against the United States," and as such, were properly dismissed for failure to exhaust the designated administrative remedies.

### III.

For the foregoing reasons, we will affirm the District Court's July 13, 2009, Order granting the Government's Motion to Substitute the United States for Murtha as well as the District Court's March 26, 2010, Order granting Murtha's and the United States' motions to dismiss.