16-1375-cv(L)
Bowles v. O'Connell

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of March, two thousand seventeen.

PRESENT: REENA RAGGI,
DENNY CHIN,
SUSAN L. CARNEY,
*Circuit Judges.*

-----------------------------------------------------------------------
BRIAN M. BOWLES,

*Plaintiff-Appellee,*

v.

Nos. 16-1375-cv (L)
16-1402-cv (CON)

UNITED STATES OF AMERICA, ROSI O'CONNELL, DENNIS O'CONNELL,

*Defendants-Appellants.*

-----------------------------------------------------------------------

| | |
|---|---|
| APPEARING FOR APPELLANT, UNITED STATES OF AMERICA: | EDWARD HIMMELFARB, Attorney, Appellate Staff, Civil Division, United States Department of Justice, *for* Eric S. Miller, United States Attorney for the District of Vermont, Burlington, Vermont *and* Benjamin C. Mizer, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C. |

APPEARING FOR APPELLANTS,     JOHN D. WILLEY, JR., Boylan Associates,
ROSI and DENNIS O'CONNELL:     P.C., Springfield, Vermont.

APPEARING FOR APPELLEE:         DAVID BOND, Strouse & Bond, PLLC,
                                Burlington, Vermont.

Appeal from an order of the United States District Court for the District of Vermont (Christina Reiss, *Chief Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order entered on February 29, 2016, is AFFIRMED in part and REVERSED in part.

Defendants, the United States of America, Rosi O'Connell ("O'Connell"), and Dennis O'Connell (collectively, "defendants"), appeal from so much of the district court's order as struck, in part, the United States Attorney General's certification under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"), Pub. L. No. 100–694, 102 Stat. 4563 (1988) (codified at 28 U.S.C. § 2671 *et seq.*) that O'Connell was acting within the scope of her employment by the United States Postal Service ("USPS") when she made allegedly defamatory statements to third parties reporting that her former co-worker, plaintiff Brian M. Bowles, had assaulted her.[1]   Bowles argues that we lack jurisdiction over this appeal, and that, in any event, certification was not warranted as to any of O'Connell's allegedly defamatory

---

[1] The certification was made by the United States Attorney for the District of Vermont as the Attorney General's delegate.   *See Osborn v. Haley*, 549 U.S. 225, 230–31 (2007).

statements.[2]  We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm in part and reverse in part.

1.  <u>Appellate Jurisdiction</u>

Under the Westfall Act, the United States may remove a state court civil case against a federal employee to federal court and substitute itself as the proper party defendant upon certification by the Attorney General that the employee was acting within the scope of her employment at the time of the alleged claim.  *See* 28 U.S.C. § 2679(d); *Osborn v. Haley*, 549 U.S. 225, 233–34 (2007).  The certification is subject to *de novo* judicial review, and the district court may strike such certification to the extent it finds that the defendant employee was not in fact acting within the scope of her employment. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995); *McHugh v. Univ. of Vt.*, 966 F.2d 67, 74–75 (2d Cir. 1992).  Because decertification effectively denies the employee Westfall Act immunity "not simply from liability, but from suit," it is deemed a "final decision" reviewable under the collateral-order doctrine.  *Osborn v. Haley*, 549 U.S. at 238.  Bowles does not dispute this proposition generally.  He argues it is inapplicable here, contending that the challenged order is intertwined with the merits because false reporting was not within the scope of O'Connell's employment, and the statements' falsity is at issue.

---

[2] Bowles does not cross-appeal, but only defends the district court's decision to strike portions of the government's certification.

3

The argument fails because, as *Osborn* instructs, on certification review, the scope of employment inquiry addresses whether O'Connell's allegedly defamatory statements were made "on duty at the time and place of an 'incident' alleged in a complaint." *Id.* at 247 (internal quotation marks omitted). The truth or falsity of the statements is not then at issue. "Were it otherwise, a federal employee would be stripped of suit immunity not by what the court finds, but by what the complaint alleges," and it "would make scant sense to read the Act as leaving an employee charged with an intentional tort to fend for himself when he denies wrongdoing and asserts [that] he engaged only in proper behavior occurring wholly within the scope of his office or employment." *Id.* at 247–48 (internal quotation marks and footnote omitted); *see also id.* at 250–51 (explaining that government is not required to accept as true plaintiff's allegations that defendant acted "maliciously" or for purposes of "retaliation" in defending Westfall Act certification). Whether certain of O'Connell's statements were made in the scope of her employment thus does not address the merits of the defamation claim, but the threshold question of whether O'Connell—rather than the United States—need defend claims relating to those statements.[3] *See id.* at 238–39 ("By rejecting the Attorney General's certification, the district court subjects the employee to the burden of defending a suit . . . , a burden from

[3] Bowles does not argue that interlocutory review is unwarranted insofar as claims relating to *some* of O'Connell's statements may proceed to trial, nor would such an argument warrant any different conclusion. *See New York State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 160 (2d Cir. 2001) (noting, in context of qualified immunity, that partial denial of immunity qualifies as collateral order); *see also Lyons v. Brown*, 158 F.3d 605, 607 (1st Cir. 1998) (concluding, in Westfall Act case, that interlocutory appeal lies "from a denial of immunity even if granting it would not resolve the entire case").

4

which the Westfall Act spares him." (alterations and internal quotation marks omitted));

*see also Wuterich v. Murtha*, 562 F.3d 375, 381–83 (D.C. Cir. 2009) (deeming decision denying Westfall Act certification pending discovery in defamation case subject to review as collateral order).

We therefore conclude that the immunity determination is distinct from the merits and that we possess appellate jurisdiction to review the district court's order insofar as it struck the scope-of-employment certification in part.

2.      Scope-of-Employment Certification

The United States appeals from only so much of the district court's decertification order as pertained to O'Connell's statements reporting (1) the alleged April 2012 assault to a substitute postmaster, and (2) the October 2012 assault allegedly committed by Bowles to postal supervisors and the police.   The O'Connells join in this challenge and further appeal decertification for statements (3) to non-supervisory co-workers regarding the April 2012 incident, and (4) to a newspaper reporter regarding both incidents. Bowles defends the decertification of all these statements by reiterating his argument that false statements were outside the scope of O'Connell's employment.   We review the district court's legal conclusions regarding the denial of immunity *de novo*, and its factual findings for clear error.   *See Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (federal sovereign immunity); *Bello v. United States*, 93 F. App'x 288, 289–90 (2d Cir. 2004) (Westfall Act immunity specifically).

5

The Attorney General's certification to the district court constitutes "*prima facie* evidence that the employee was acting within the scope of his employment." *Wuterich v. Murtha*, 562 F.3d at 381 (internal quotation marks omitted). Thus, "[t]he United States . . . must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn v. Haley*, 549 U.S. at 231 (emphasis in original). Whether the employee was in fact acting within the scope of his or her employment for purposes of the Westfall Act is determined by reference to "principles of *respondeat superior* of the state in which the alleged tort occurred." *Saleh v. Bush*, 848 F.3d 880, 888 (9th Cir. 2017) (internal quotation marks omitted); *see McHugh v. Univ. of Vt.*, 966 F.2d at 75. Vermont adopts the scope-of-employment standard in the Restatement (Second) of Agency, *see Doe v. Forrest*, 176 Vt. 476, 483, 853 A.2d 48, 54 (2004), which recognizes employee conduct as within the scope of employment only if,

(a) it is of the kind [the individual] is employed to perform;

(b) it occurs substantially within the authorized time and space limits [of the employment];

(c) it is actuated, at least in part, by a purpose to serve the master; and

(d) if force is intentionally used . . . the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228(1) (1958). While conduct must take place within these parameters to be within the scope of employment, the employer need not

"specifically authorize the precise action the [employee] took." *Sweet v. Roy*, 173 Vt. 418, 431–32, 801 A.2d 694, 704 (2002).

   a.   Veracity of the Alleged Misstatements

Insofar as Bowles relies on his own allegations of falsity to argue that O'Connell's statements were outside the scope of her employment, we have already explained why that disputed merits issue does not govern certification review. *See Osborn v. Haley*, 549 U.S. at 248–51; *Wuterich v. Murtha*, 562 F.3d at 384–87. To the extent Justice Breyer took a different view, *see Osborn v. Haley*, 549 U.S. at 254 (Breyer, J., concurring in part and dissenting in part) ("[W]here the incident, if it took place at all, *must have fallen* outside the scope of employment, the Act does not permit certification." (emphasis in original)), it was not adopted by the *Osborn* majority, *see id.* at 248 (majority opinion) (rejecting view that "employee charged with an intentional tort" should be left "to fend for himself when he denies wrongdoing"); *id.* at 249–50 (stating that applicability of Westfall Act should not be controlled by "the plaintiff's allegations"), whose decision controls here, *see generally Balintulo v. Daimler AG*, 727 F.3d 174, 190 (2d Cir. 2013) ("Lower courts are . . . without authority to 'reinterpret' the [Supreme] Court's binding precedent . . . ."). In any event, Vermont does not deem conduct outside the scope of employment simply because, if proved, it would constitute an intentional tort. *See* Restatement (Second) of Agency § 231 ("An act may be within the scope of employment although consciously criminal or tortious."); *accord Sweet v. Roy*, 173 Vt. at 432, 801 A.2d at 704–05.

Accordingly, this court, like the district court, declines to hold that Bowles's allegations of falsity remove O'Connell's reports from the scope of her employment.

b.     Statements to Postmaster Relief Regarding April 2012 Incident

The district court upheld the government's certification insofar as O'Connell, pursuant to USPS policy, reported the alleged April 2012 assault to her supervisors, but it held certification unwarranted insofar as O'Connell also reported the assault to her postmaster relief, whom the district court appears to have considered a non-supervisory USPS employee.

We cannot agree.   Bowles does not dispute that instances of co-worker violence must be reported to supervisors, and the record indicates that the postmaster relief performs the same supervisory duties as the postmaster in the latter's absence. Moreover, an individual reporting such an incident to the postmaster relief would be no less "actuated . . . by a purpose to serve" her employer than one reporting the incident to other supervisory employees.   *See* Restatement (Second) of Agency § 228(2). Accordingly, we reverse decertification as to O'Connell's report to the postmaster relief.

c.     Statements to Police Officers and Supervisors Regarding the October 2012 Incident

The district court deemed O'Connell's reports of the October 2012 incident to be outside the scope of her employment because the alleged assault occurred at her home after work hours, and O'Connell characterized the incident as "not a postal issue."   J.A. 291.   We conclude that decertification was unwarranted insofar as O'Connell reported the incident to police and supervisors.   USPS policy requires postal employees to report

8

to such persons acts of violence by a co-worker, even if the co-worker has already been terminated, and whether or not the incident occurs at work. The propriety of the government's scope certification thus turned on the time and place not of the alleged assault but of her reports, *see* Restatement (Second) of Agency § 228(1)(b), and on whether those reports to police officers and supervisors served the purpose of her employer, *see id.* § 228(1)(c). O'Connell's quoted statement is not a concession to the contrary because, at the same time, she stated that "she felt she should let [her employer] know since [the assault] may possibly involve the former [Highway Contract Routes] driver who she had [workplace] problems with before." J.A. 133. We therefore reinstate the certification as to reports of the October 2012 incident to police and supervisors.

d.    <u>Statements to Co-Workers Regarding April 2012 Incident</u>

At the same time, we affirm decertification with regard to statements to non-supervisory co-workers. The O'Connells cite no USPS policy requiring alleged assaults by co-workers to be reported not only to supervisors but also to all other co-workers. Nor do they provide any basis for O'Connell to think that Bowles posed a threat of physical harm to persons other than herself.

e.    <u>Statements to Newspaper Reporter Regarding Both Incidents</u>

We similarly affirm decertification as to statements regarding both alleged assaults that O'Connell made to a newspaper reporter. While O'Connell, as postmaster, served as USPS's local media representative, she was specifically advised by her superiors *not* to

speak to the media with respect to the assaults she attributed to Bowles. We therefore identify no error in the district court's conclusion that, in discussing the alleged assaults with a newspaper reporter, O'Connell was acting in a personal capacity, and not serving her employer's interests.

3.   Conclusion

We have considered the parties' other arguments and conclude that they are without merit. Accordingly, we AFFIRM the district court's order insofar as it denied Westfall Act certification and substitution as to O'Connell's statements to non-supervisory co-workers regarding the April 2012 incident and to a newspaper reporter regarding both incidents, and we REVERSE that order insofar as it denied such certification and substitution as to O'Connell's statements to the postmaster relief regarding the April 2012 incident, and her statements to police officers and supervisors regarding the October 2012 incident. We REMAND for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10