Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 8, 2003          Decided May 6, 2003

No. 02-5120

BILLY STOKES,
APPELLANT

v.

STEVEN CROSS, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02305)

———

*Richard Carnell Baker* argued the cause and filed the briefs for appellant.

*Beverly M. Russell*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: ROGERS and GARLAND, *Circuit Judges,* and SILBERMAN, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Contending that the district failed to follow the procedures set forth in *Kimbro v. Velten*, 30 F.3d 1501 (D.C. Cir. 1994), Sergeant Billy S. Stokes of the Uniformed Police Branch of the United States Government Printing Office appeals the dismissal of his defamation complaint against seven co-workers. He contends that the district court treated a Westfall certification as dispositive rather than allowing him to conduct discovery on the scope-of-employment issue and holding an evidentiary hearing. We agree and reverse.

## I.

According to the complaint's factual allegations, which this court accepts as true, *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 871 (D.C. Cir. 2002), Sergeant Billy S. Stokes worked for over twenty-five years as a member of the Uniformed Police Branch of the United States Government Printing Office ("GPO") and had an unblemished employment record. That almost changed as a result of an incident on November 4, 2000, while Stokes was the "Officer-in-Charge." Officer William Wilson, Stokes' subordinate, was stationed that evening at a GPO lot where an unknown individual was attempting to enter without authorization. After Wilson radioed for assistance, Stokes and the central dispatcher monitored the situation on surveillance cameras and maintained radio contact with Wilson until the incident was resolved. Several months later, Stokes received a Notice of Proposed Adverse Employment Action ("Notice"), which charged that on November 4 he had failed to provide Officer Wilson with necessary assistance in dealing with the trespasser.

Stokes challenged the Notice as "false and malicious or made with reckless disregard for the truth," and GPO canceled the Notice. Stokes also filed a complaint in the Superior Court of the District of Columbia, alleging that the seven co-workers not only failed reasonably to investigate the inci-

dent in good faith and to interview critical eyewitnesses, but also destroyed and ignored critical evidence, including video and audio tapes that would have exonerated Stokes. Specifically, Stokes alleged that Lieutenant Steven Cross and Commander James C. Raysinger, Stokes' superiors, induced the participation of Manuel Rivera, Phillip Griffin, and Collins Bailey, Jr., Stokes' subordinates, to manufacture false statements in support of the Notice. He further alleged that they had threatened Corporal Sherman Gray's career and livelihood if he did not make a statement adverse to Stokes; Gray executed a statement prepared by Griffin and Rivera but later recanted it. The defendants' actions, Stokes claimed, were designed to prevent his promotion, as it was well known that he intended to apply for the position of his supervisor, who had recently announced his plans to retire. Stokes alleged that he was "a leading and an extremely well-qualified candidate" for the position because of his seniority and "unblemished employment performance history." "[D]ue to spite, malice and ill-will and other sinister reasons," he claimed, the defendants sought to besmirch his record and foil his promotion opportunity by "orchestrat[ing] a conspiracy to injure, defame, harm, or destroy" his professional reputation.

On motion of three defendants the case was removed to United States district court. 28 U.S.C. §§ 1441, 1442(a)(1), & 1446 (2000). In the district court, Assistant United States Attorney ("AUSA") Mark E. Nagle, by authority delegated to and by the United States Attorney, filed a certification stating that "C. Steven Cross, Raymond Garvey, James C. Raysinger, William Wilson, and Collins Bailey, Jr. were acting within the scope of their authority as employees of the United States at the time of [the] alleged incidents." AUSA Nagle later filed a second certification stating that Griffin and Rivera were acting within the scope of their employment.

At a status call, the district court considered AUSA Nagle's certification to be "prima facie evidence" on the scope-of-employment issue and stated that Stokes had "given no evidence to suggest that Mr. Nagle is not able to make the certification that he has." The court therefore substituted the United States as defendant and, because the United

States had not waived its immunity from defamation claims, 28 U.S.C. § 2680(h) (2000), dismissed Stokes' claims against the five defendants named in the AUSA's first certification. After receiving the second certification, the court, *sua sponte*, dismissed the remaining claims.

## II.

In *Westfall v. Erwin*, 484 U.S. 292, 300 (1988), the Supreme Court held that federal employees are absolutely immune from state tort liability only if (1) they were acting within the scope of their employment and (2) their actions were discretionary in nature. Congress acted quickly to nullify "the *Westfall* decision by establishing legislated standards to govern the immunity of Federal employees who have allegedly committed state common law torts." H.R. Rep. No. 100–700, at 4 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5945, 5947. The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, 28 U.S.C. § 2679(d) (2000), negated the discretionary function requirement, providing instead that immunity attaches so long as the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose . . . ." *Id*. § 2679(d)(1). Thus, when a federal employee is sued for a wrongful or negligent act, the United States Attorney General, or by designation the United States Attorney in the district where the claim is brought, may certify that the employee was acting at the time within the scope of his or her employment. 28 U.S.C. § 2679(d)(1); 28 C.F.R. § 15.3(a) (2002). "Upon certification . . . any civil action or proceeding commenced upon such claim in a State court shall be removed . . . to the district court of the United States for the district and . . . shall be deemed to be an action or proceeding brought against the United States . . . ." 28 U.S.C. § 2679(d)(2). The Westfall Act further provides that "[t]his certification . . . shall conclusively establish scope of office or employment for purposes of removal." *Id.*

The Supreme Court has held that the government's scope of employment determination under the Westfall Act is judi-

cially reviewable regarding the substitution of the government. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995). In *Lamagno*, the Court noted that the petitioner's claims arose in a foreign country and therefore fell within an exception to the Federal Tort Claim Act's waiver of the United States' sovereign immunity. *Id.* at 422. As a result, "substitution of the United States would cause the demise of the action. . . ." *Id.* The Attorney General, thus, had a strong incentive to certify that the defendants were acting in the scope of their employment, because the certification sheltered not only the individual employees but also the United States from liability. *Id.* at 427–28. These circumstances, the Court concluded, magnified the need for judicial review. *Id.* at 429–30. The Court also observed that the legislative history and purpose did not show "that Congress meant the Westfall Act to commit the critical 'scope-of-employment' inquiry to the unreviewable judgment of the Attorney General or her delegate. . . ." *Id.* at 426. The Court accordingly concluded that "the Attorney General's certification that a federal employee was acting within the scope of his employment—a certification the executive official, in cases of the kind at issue, has a compelling interest to grant—does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." *Id.* at 434.

This circuit had reached the same conclusion a year earlier in *Kimbro*, which held that "[r]egardless of the content of the certification . . . the federal district court must at least conduct an evidentiary hearing on the scope issue." 30 F.3d at 1508. "If there is a material dispute as to the scope issue," the court said, "the district court must resolve it at an evidentiary hearing." *Id.* at 1509. "[T]his procedure," the court continued, is "in keeping with the statutory scheme[, which] does not really treat the certification as having any particular evidentiary weight. . . ." *Id.* The court also considered the weight to which the government's certification is entitled, adopting the approach of the Third Circuit. *Id.* at 1509. In *Melo v. Hafer*, 13 F.3d 736 (3d Cir. 1994), the Third Circuit treated the certification as entitled to "*prima facie* effect" but stated that

> [i]f the Attorney General's certification is based on a different understanding of the facts than is reflected in the complaint, the plaintiff should be permitted reasonable discovery and should then be called upon to come forward, as if responding to a motion for summary judgment, with competent evidence supporting the facts upon which he would predicate liability, as well as any other facts necessary to support a conclusion that the defendant acted beyond the scope of his employment.

*Id.* at 747; *Kimbro*, 30 F.3d at 1509. This court has reiterated the *Kimbro* approach since the Supreme Court's decision in *Lamagno*, stating that the certification

> is *not* conclusive regarding substitution of the federal government. Instead, the federal court may determine independently whether the employee acted within the scope of employment and, therefore, whether to substitute the federal government as the proper defendant.

*Haddon v. United States*, 68 F.3d 1420, 1423 (D.C. Cir. 1995) (citing *Lamagno*, 515 U.S. at 434; *Kimbro*, 30 F.3d at 1505). The court also has noted that the scope of employment question is controlled by applicable state law—here, District of Columbia law. *Id.* at 1423.

Other circuits have agreed that a plaintiff challenging the government's scope-of-employment certification "bears the burden of coming forward with specific facts rebutting the certification," and that the question of scope of employment is governed by state law. *Lawson v. United States*, 103 F.3d 59, 60 (8th Cir. 1996); *accord Singleton v. United States*, 277 F.3d 864, 870–71 (6th Cir. 2002); *Ross v. Bryan*, 309 F.3d 830, 833–34 (4th Cir. 2002); *McClachlan v. Bell*, 261 F.3d 908, 909–11 (9th Cir. 2001). Because the plaintiff cannot discharge this burden without some opportunity for discovery, the district court may permit limited discovery and hold an evidentiary hearing to resolve a material factual dispute regarding the scope of the defendant's employment. *E.g.*, *Singleton*, 277 F.3d at 871; *Taboas v. Mlynczak*, 149 F.3d 576, 580–81 (7th Cir. 1998).

Upon *de novo* review of the district court's dismissal of Stokes' complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, *Sturm, Ruger & Co.*, 300 F.3d at 871; *Wilson v. Pena*, 79 F.3d 154, 162 n.1 (D.C. Cir. 1996), we find that the district court gave no consideration to whether a material dispute may exist concerning the seven defendants' scope of employment. Observing that AUSA Nagle had certified that the defendants acted within the scope of their employment, the district court stated that the certification served as "prima facie evidence" and Stokes had "given no evidence to suggest that Mr. Nagle is not able to make the certification that he has." In opposition to the motion to dismiss, however, Stokes made essentially the same arguments he makes here to show that he was entitled to discovery on the scope-of-employment issue. When government counsel stated her reply brief would argue that the defendants were in fact acting within the scope of their employment under District of Columbia law, the court responded, "Well, in lieu of your reply I will just accept your representation that you would state that. That is the law, as I understand it, and ... Plaintiff has made no showing that Mr. Nagle is for any reason not qualified to make the certification that he has." The court then dismissed Stokes' complaint against five defendants "for essentially the reasons set forth by the government in its motion and the scope-of-employment certification. . . ." The court adopted the same approach in accepting AUSA Nagle's subsequent certification and *sua sponte* dismissed Stokes' complaint against the remaining two defendants.

The district court misapprehended the law regarding scope-of-employment certifications. Stokes' burden was not to show that AUSA Nagle lacked the authority to issue the certification. Stokes understandably has never challenged that authority. *See* 28 U.S.C. § 2679(d); 28 C.F.R. § 15.3(a). Instead, Stokes' burden was to raise a material dispute regarding the substance of AUSA Nagle's determination by alleging facts that, if true, would establish that the defendants were acting outside the scope of their employment. *See Kimbro*, 30 F.3d at 1508–09. The district court never gave

Stokes that opportunity. Rather, the court essentially afforded conclusive weight to AUSA Nagle's certification and apparently gave no thought to the possibility that the certification may have been in error. This procedure was contrary to *Kimbro*'s instruction that the district court "not really treat the certification as having any particular evidentiary weight...." *Id.* at 1509.

Stokes' complaint contains sufficient factual allegations to warrant discovery on the question of scope of employment. Rule 8's liberal pleading standard requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and courts are charged with construing the complaint "so ... as to do substantial justice," Fed. R. Civ. P. 8(f). The Rules "do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citations omitted). " 'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Id.* at 511 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "To that end, the complaint is construed liberally in the plaintiffs' favor, and we grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citations omitted).

Consequently, to obtain discovery and an evidentiary hearing, Stokes need only have alleged sufficient facts that, taken as true, would establish that the defendants' actions exceeded the scope of their employment. The scope issue is governed by District of Columbia law, which looks to the Restatement (Second) of Agency (1958) in defining scope of employment. *Haddon*, 68 F.3d at 1423–24. Under the Restatement,

> [c]onduct of a servant is within the scope of employment if, but only if: [a] it is of the kind he is employed to

perform; [b] it occurs substantially within the authorized time and space limits; [c] it is actuated, at least in part, by a purpose to serve the master; and [d] if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228(1). "Conduct of a servant is not within the scope of employment if it is . . . too little actuated by a purpose to serve the master." *Id.* § 228(2). The District of Columbia's formulation of this test "excludes from the scope of employment all actions committed 'solely for [the servant's] own purposes.'" *Weinberg v. Johnson*, 518 A.2d 985, 990 (D.C. 1986) (footnote omitted). "[T]he intent criterion focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that 'was originally undertaken on the employer's behalf.'" *Id.* at 992 (citations omitted); *see also Boykin v. District of Columbia*, 484 A.2d 560, 562 (D.C. 1984).

The government contends that the defendants' conduct was within the scope of their employment because it was incidental to their duty to investigate and report officers who fail to render assistance. Stokes contends, however, that the defendants' alleged conduct—destroying critical evidence, preparing and submitting false affidavits by use of threat and coercion, and engaging in other criminal acts—falls outside the scope of their employment. It is unclear whether evidence of such conduct alone would be sufficient under District of Columbia law, which liberally construes the doctrine of respondeat superior, at least with respect to the first prong of the Restatement (Second) of Agency § 228(1). *See Haddon*, 68 F.2d at 1425–26; *Weinberg*, 518 A.2d at 988–90. But Stokes' counsel explained that, if permitted to conduct discovery on the scope-of-employment issue, he would seek depositions of the defendants and other witnesses as well as statements they had made and memoranda they had written indicating their intent to prevent the best candidate, namely Stokes, from getting the promotion. Such evidence, he maintained, would indicate that they had maliciously acted con-

trary to their employer's interest and, therefore, outside the scope of their employment.

Not every complaint will warrant further inquiry into the scope-of-employment issue. In *Singleton*, 277 F.3d 864, for example, the Sixth Circuit noted that while an evidentiary hearing on the scope issue may sometimes be appropriate, the district court had not erred in dismissing the claim without a hearing where the plaintiff "did not allege any facts in his complaint or in any subsequent filing . . . that, if true, would demonstrate that [the defendant] had been acting outside the scope of his employment." *Id.* at 871; *accord Davric Maine Corp. v. United States Postal Serv.*, 238 F.3d 58, 67 (1st Cir. 2001). But that is not this case. Stokes was not required to allege the existence of evidence he might obtain through discovery. *See Swierkiewicz*, 534 U.S. at 512–13. He was merely required to plead sufficient facts that, if true, would rebut the certification. We hold that he met that burden and is entitled to discovery.

Accordingly, because the district court deviated from the *Kimbro* approach by essentially affording conclusive weight to the AUSA's scope-of-employment certifications and failing to consider whether Stokes' allegations entitled him to discovery, we reverse. On remand, the district court shall allow Stokes to conduct at least limited discovery on the scope-of-employment issue.