# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 9, 2013                    Decided July 26, 2013

No. 12-5107

LINDA JACOBS,
APPELLANT

v.

MICHAEL J. VROBEL,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00953)

*Martin F. McMahon* argued the cause for the appellant.

*Peter C. Pfaffenroth*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen*, *Jr.*, United States Attorney, and *R. Craig Lawrence*, Assistant United States Attorney, were on brief.

Before: HENDERSON and BROWN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Linda Jacobs (Jacobs), an employee of the United States General

Services Administration (GSA), sued her long-time supervisor, Michael Vrobel (Vrobel), in the District of Columbia Superior Court for defamation and interference with her attempts to secure alternative employment. Because Vrobel was then (and remains) a federal employee, Jacobs's lawsuit was not a garden-variety tort suit. Instead, pursuant to the Westfall Act, Pub. L. No. 100-694, 102 Stat. 4563 (codified as amended in relevant part at 28 U.S.C. § 2679), the United States Attorney General certified that Vrobel's conduct was within the scope of his employment, thus removing the case to federal district court and substituting the United States as the defendant. Concluding that Vrobel did in fact act within the scope of his employment, the district court dismissed the suit as jurisdictionally barred by the Federal Tort Claims Act (FTCA). Mem. Op., *Jacobs v. Vrobel*, No. 11-cv-953 (D.D.C. Mar. 8, 2012). On appeal, Jacobs argues that Vrobel's conduct was outside the scope of his employment. We disagree and therefore affirm the district court's dismissal for lack of subject matter jurisdiction.

## I.

Jacobs began working for GSA in June 1990 and Vrobel served as her supervisor from 1995 through 2010. Compl. ¶¶ 4-5 (Joint Appendix (JA) 2). Jacobs originally worked in another position but in 1999 GSA promoted her to "a Contract Specialist position . . . as a result of a successful Equal Employment Opportunity complaint that she filed." Compl. ¶ 6 (JA 2). Jacobs alleges that, from 1992 to the present, she has received numerous awards and positive performance ratings from GSA. Compl. ¶¶ 7-8 (JA 2). Despite seeking other employment since September 1990, however, Jacobs has not received a job offer. Instead, she alleges, she "has been literally held prisoner at GSA . . . for the past 20 years." Compl. ¶ 13 (JA 3). She believes that she has been unable to find a new job because Vrobel "defames [her] and criticizes

her work abilities when [a] potential employer calls for a reference." Compl. ¶ 21 (JA 4). She alleges that "[o]n numerous occasions when she was told that she had [a] new job [for which she interviewed], the new job disappeared after the hiring agency contacted GSA and Plaintiff's supervisor." Compl. ¶ 20 (JA 4).

On May 2, 2011, Jacobs filed a two-count complaint in the District of Columbia Superior Court against Vrobel for defamation and "malicious intentional interference with plaintiff's alternative employment opportunities."[1] Compl. ¶¶ 12-32 (JA 3-5). Under the Westfall Act, however, if a plaintiff brings a tort suit against a federal employee in state court, the Attorney General may certify that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). Upon certification, the employee is dismissed from the action, the United States is substituted as the defendant, the claim is removed to federal district court and the claim becomes governed by the FTCA. *Id.* § 2679(d)(1)-(2). As the United States Supreme Court has explained, "the purpose of the Westfall Act [is] to shield covered employees not only from liability but from suit." *Osborn v. Haley*, 549 U.S. 225, 248 (2007).

---

[1] The allegations in count two appear to refer to GSA, not Vrobel. Jacobs complains that "Defendant *supervisors* had no intention to see the Plaintiff depart from her position at GSA," "*they* purposely lied to the potential employer," "*they* were interfering with Plaintiff's ability to change jobs" and "*[t]hey* knew that if she was given a bad reference that would put an end to the new potential employer's interest." Compl. ¶¶ 28-31 (JA 5) (emphases added). We assume this is a series of typographical errors, given that Jacobs did not name GSA as a defendant.

On May 23, 2011 the Attorney General through his delegate certified that Vrobel "was acting within the scope of his employment . . . at the time of the alleged incidents." Certification, *Jacobs v. Vrobel*, No. 11-cv-953 (D.D.C. May 23, 2011) (JA 14). The certification removed Jacobs's suit to the United States District Court for the District of Columbia and substituted the United States as the defendant. The next day, the United States moved to dismiss Jacobs's complaint for lack of subject matter jurisdiction and failure to state a claim, attaching an affidavit in which Vrobel declared that he acted within the scope of his employment at all relevant times and in all relevant actions. Mot. to Dismiss, *Jacobs v. Vrobel*, No. 11-cv-953 (D.D.C. May 24, 2011). On March 8, 2012, the court dismissed Jacobs's complaint for lack of subject matter jurisdiction. Mem. Op. 10, *Jacobs v. Vrobel*, No. 11-cv-953 (D.D.C. Mar. 8, 2012). Because Vrobel had acted in the scope of his employment, the court concluded, Jacobs's only recourse was to proceed under the FTCA against the United States, *id.* at 8, and, because Jacobs's claims were governed by the FTCA, it lacked subject matter jurisdiction for two independent reasons: first, Jacobs failed to exhaust administrative remedies under the FTCA and second, the United States had not waived its sovereign immunity from suit for the torts Jacobs alleged. *Id.* at 8-10. Jacobs timely appealed.

## II.

Jacobs argues that the district court erred in holding that Vrobel acted in the scope of his employment when he allegedly defamed Jacobs and interfered with her alternative employment opportunities. In addition, Jacobs complains that she should have been granted limited discovery on the scope of employment issue before dismissal. We review *de novo* the district court's dismissal, *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 786 (D.C. Cir.

2010), including its conclusion that Vrobel was acting within the scope of his employment, *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006) (per curiam). In so doing, we assume that "all material factual allegations in the complaint" are true and accord the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation marks omitted).

In a Westfall Act case, we consider more than the allegations in the complaint to determine whether the defendant acted in the scope of his employment. *See Osborn*, 549 U.S. at 249. The Attorney General's certification that the defendant was so acting is *prima facie* evidence of that fact. *Ballenger*, 444 F.3d at 662; *see also Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008) ("The certification carries a rebuttable presumption that the employee has absolute immunity from the lawsuit and that the United States is to be substituted as the defendant."). To rebut the certification, the plaintiff must allege, in either the complaint or a subsequent filing, specific facts "that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment." *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003). If the plaintiff satisfies this burden, "he may, if necessary, attain 'limited discovery' to resolve any factual disputes over jurisdiction." *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009) (quoting *Stokes*, 327 F.3d at 1214, 1216). In determining whether the plaintiff has alleged facts to rebut the certification, we heed the Supreme Court's instruction:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We accept factual allegations as true but we do not do the same for legal conclusions—therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining whether an employee acted within the scope of his employment, we consider the substantive law of the jurisdiction where the employment relationship exists— here, the law of the District of Columbia (District). *Majano v. United States*, 469 F.3d 138, 141 (D.C. Cir. 2006). Courts of the District analyze this issue *via* a test established by the Second Restatement of Agency, which provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits; [and]

(c) it is actuated, at least in part, by a purpose to serve the master . . . .

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

RESTATEMENT (SECOND) OF AGENCY § 228 (1958) (RESTATEMENT); *see Wilson*, 535 F.3d at 711. The test is "objective" and is "based on all the facts and circumstances." *Weinberg v. Johnson*, 518 A.2d 985, 991 (D.C. 1986).

Moreover, as we recently noted, the District has broadly interpreted the test:

> Many states and D.C. apply the scope-of-employment test very expansively, in part because doing so usually allows an injured tort plaintiff a chance to recover from a deep-pocket employer rather than a judgment-proof employee. The scope-of-employment test often is akin to asking whether the defendant merely was on duty or on the job when committing the alleged tort. Because of the broad scope-of-employment standard in many states and D.C., and because the FTCA and the Westfall Act incorporate the relevant state's test, tort claims against federal government employees often proceed against the Government itself under the FTCA rather than against the individual employees under state law.

*Harbury v. Hayden*, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008) (citation omitted).

Jacobs first argues that Vrobel's conduct fails the first prong of the Restatement test because it is not "of the kind [Vrobel was] employed to perform." RESTATEMENT § 228(1)(a). In determining whether Vrobel's conduct satisfies this prong, District law requires that we focus on the type of act Vrobel took that allegedly gave rise to the tort, not the wrongful character of that act. *See Ballenger*, 444 F.3d at 664 ("The proper inquiry in this case focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf." (quotation marks omitted)). For example, in *Ballenger*, we held that a congressman acted within the scope of his employment when he allegedly defamed the plaintiff during a telephone call with the press because

"[s]peaking to the press during regular work hours in response to a reporter's inquiry falls within the scope of a congressman's authorized duties." *Id.* (quotation marks omitted). In evaluating this prong of the Restatement, we explained, "[t]he appropriate question . . . is whether that telephone conversation—not the allegedly defamatory sentence—was the kind of conduct [the congressman] was employed to perform." *Id.*; *see also Rasul v. Myers*, 512 F.3d 644, 656-57 (D.C. Cir.) ("To be 'of the kind' of conduct an individual is employed to perform, the Restatement explains that the 'conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.'" (quoting RESTATEMENT § 229(1)), *vacated on other grounds*, 555 U.S. 1083 (2008).

Vrobel's conduct easily satisfies this prong. Jacobs's theory of recovery in both counts of her complaint is that Jacobs (1) applied for employment outside GSA's contracting division as well as outside GSA; (2) Vrobel answered inquiries from prospective employers about Jacobs; and (3) due to Vrobel's negative response, the employers did not hire Jacobs. *See* Comp. ¶¶ 23, 29 (JA 4-5). The *type of act* that Vrobel allegedly took here—responding to a prospective employer's request for a reference—is plainly "the kind of conduct [Vrobel] was employed to perform." *Ballenger*, 444 F.3d at 664.

Jacobs also contends that Vrobel's conduct fails the third prong of the Restatement test because it was not "actuated, at least in part, by a purpose to serve the master." RESTATEMENT § 228(1)(c). To satisfy this prong, the employee must have had an "intention to perform [the conduct in question] *as a part of or incident to* a service on account of which he [was] employed." *Schechter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 428 (D.C. 2006) (emphasis added and quotation marks omitted). This requires only a "*partial* desire to serve

the [employer]." *Ballenger*, 444 F.3d at 665 (emphasis added). Again, we examine "the underlying dispute or controversy, not . . . the nature of the tort." *Johnson*, 518 A.2d at 992. Further, the test "is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf." *Id.* (quotation marks omitted). Finally, because the focus of our analysis is on "the state of the servant's mind[,] . . . external manifestations are important only as evidence." *Schechter*, 892 A.2d at 428 (quotation marks omitted).

Conclusory allegations aside, we cannot infer from Jacobs's complaint that Vrobel did not intend, "at least in part, . . . to serve" GSA by fielding prospective employers' requests for a reference and allegedly defaming Jacobs while doing so. Indeed, her allegations contradict her position. Jacobs alleges that Vrobel answered the reference calls in his role as her supervisor at GSA. *See* Compl. ¶ 20 (noting "the new job[s] disappeared after the [prospective employer] contacted *GSA* and Plaintiff's supervisor" (emphasis added)); Compl. ¶ 23 ("the potential employer calls *the GSA* for a reference" (emphasis added)). Nor does Jacobs contend that responding to reference calls from prospective employers is not an act undertaken on GSA's behalf. While Jacobs alleges that Vrobel defamed her during the calls, District law requires, as noted earlier, that we focus on the "underlying dispute or controversy" (the reference call), not "the nature of the tort" (the defamatory statement). *Johnson*, 518 A.2d at 992. Responding to a reference call is an act plainly intended to benefit his employer and, accordingly, we conclude that Vrobel intended, at least in part, to serve GSA when he allegedly defamed Jacobs during the call.

Jacobs also alleges, apparently in an effort to show Vrobel's state of mind, that he gave negative references to prospective employers because he "had no intention to see the

Plaintiff depart from her position at GSA." Compl. ¶ 28 (JA 5); *see also* Compl. ¶¶ 29-31 (JA 5). The allegation is not only conclusory, however, but also suggests that Vrobel's negative reference *was* given in an effort to aid his employer by keeping Jacobs, who claims to be a top-flight employee, employed with GSA.

In addition, Jacobs's case is distinguishable from the principal precedent on which Jacobs relies: *Stokes v. Cross*, 327 F.3d 1210 (D.C. Cir. 2003), and *Majano v. United States*, 469 F.3d 138 (D.C. Cir. 2006). In *Stokes*, the plaintiff alleged that his superiors intentionally injured his professional reputation by filing a false adverse incident report, destroying critical exculpatory evidence and threatening an employee in an attempt to force him to make a false statement. 327 F.3d at 1212. After the Attorney General certified that the defendants' actions fell within the scope of their employment, the district court dismissed the complaint, reasoning that Stokes had "given no evidence to suggest that [the Attorney General's delegate was] not able to make the certification." *Id.* (quotation marks omitted). We reversed because the district court erroneously required the plaintiff to show the delegate lacked authority to issue the certification; the district court should have decided whether the plaintiff had alleged sufficient facts to show the defendants acted outside the scope of their employment. *Id.* at 1214-15. We further held that, based on allegations of "destroying critical evidence, preparing and submitting false affidavits by use of threat and coercion, and engaging in other criminal acts," the plaintiff had pleaded sufficient facts to support his allegation that the defendants acted for their own purpose to destroy the plaintiff's reputation. *Id.* at 1216.

Here, in contrast, the district court did not give "conclusive weight to the [delegate's] scope-of-employment certifications." *Id.* Instead, it evaluated for itself whether,

based on Jacobs's allegations, Vrobel had acted in the scope of his employment. Mem. Op. at 4, *Jacobs v. Vrobel*, No. 11-cv-953 (D.D.C. Mar. 8, 2012) ("The government's certification, however, is not conclusive."). Moreover, unlike here, Stokes's allegation of malice was supported by specific allegations of a false report, coercion and destruction of evidence. *Stokes*, 327 F.3d at 1212, 1216.

In *Majano*, a co-worker allegedly assaulted the plaintiff when the plaintiff attempted to prevent the co-worker from entering the employer's building. 469 F.3d at 140. After shoving the plaintiff to obtain entry, the co-worker then injured her by grabbing and repeatedly yanking the plaintiff's lanyard. *Id.* In reversing the district court's grant of summary judgment to the defendant, we concluded, first, that the initial assault was within the scope of the co-worker's employment because it was animated by a desire to serve the employer (by gaining entrance to the building). The subsequent assault, however, was "violent and unprovoked and took place after [the defendant] had walked approximately 30-feet down a hallway well inside the building" and was thus unrelated to the original provocation or any work-related function. *Id.* at 142.

Jacobs's suit is factually distinct from *Majano*. There, the defendant committed a violent tort unrelated to whatever business for her employer she was attempting to attend to by entering the building. Here, Jacobs merely alleges that Vrobel performed a legitimate work-related function—fielding employment reference calls—in an impermissible manner.

Finally, we note that Jacobs's complaint includes several allegations against Vrobel that have nothing to do with her claims. Specifically, Jacobs complains that Vrobel (1) gave her too much work; (2) removed files from her desk; (3) prohibited her from speaking with co-workers about work-related problems; and (4) spread rumors about her. Compl.

12

¶ 10 (JA 2-3). But the basis of both counts of her complaint is that Vrobel allegedly harmed her by making negative statements about her to prospective employers. Whether Vrobel was acting outside the scope of his employment in taking the four actions alleged above is irrelevant because they do not relate to Jacobs's claims. *See Iqbal*, 556 U.S. at 668 (allegations of complaint "against defendants who are not before us" irrelevant in determining whether complaint survives motion to dismiss). Indeed, Jacobs characterizes the allegations as examples of a "hostile workplace environment"—plainly, not one of her causes of action. Compl. ¶ 10 (JA 2).

For the foregoing reasons, we affirm the district court's judgment of dismissal.[2]

*So ordered.*

---

[2] Jacobs is not entitled to discovery because there are no factual issues raised by the complaint that must be resolved. *See Stokes*, 327 F.3d at 1216 (plaintiff entitled to discovery if she "alleged sufficient facts that, taken as true, would establish that the defendant['s] actions exceeded the scope of [her] employment").