# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60700
No. 18-60701

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2019

Lyle W. Cayce
Clerk

CHARLES BOLTON; LINDA BOLTON,

Plaintiffs–Appellants,

versus

UNITED STATES OF AMERICA,

Defendant–Appellee.

Appeals from the United States District Court
for the Southern District of Mississippi

Before JOLLY, SMITH, and COSTA, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Charles and Linda Bolton sued two federal agents for making allegedly defamatory comments to a local news station. The district court held that the Boltons failed to allege specific facts that, taken as true, establish that the agents' actions exceeded the scope of their employment. As a result, the court denied scope-of-employment discovery, substituted the United States as the

No. 18-60700
No. 18-60701

proper defendant, and dismissed for failure to file an administrative claim. We affirm.

I.

In September 2016, a jury convicted Charles Bolton on four counts of tax evasion and five counts of filing a false tax return and Linda Bolton on five counts of filing a false tax return. At sentencing, the government contended that the Boltons did not pay taxes on the value of food they stole from Forrest County Jail and used in their catering and restaurant business. The court "looked long and hard at this particular issue" and determined that it was "clear that Mr. and Mrs. Bolton, while they [were] not charged with a conspiracy, worked together and agreed on a common plan or scheme to utilize things to increase their cash income." The court explained that the Boltons "took advantage of the stolen food" and "didn't pay the taxes on what they earned." "There was a culture of corruption in the Forrest County Jail," and the Boltons "participated in it for 10 years." Consequently, the court enhanced the Boltons' sentences based on other "relevant conduct" in the form of "jail food theft." Charles and Linda were sentenced to 45 and 30 months, respectively, and ordered, jointly and severally, to pay more than $145,000 in restitution. We affirmed.[1]

Just over a month after the sentencing, a local news station interviewed Christopher Freeze and Jerome McDuffie about the Boltons' criminal transgressions. Freeze is the Special Agent in Charge of the FBI's Jackson Division. As "the top executive official of the FBI" in Mississippi, Freeze is "responsible for all FBI business" there. One of Freeze's principal responsibilities is to

---

[1] *See United States v. Bolton*, 908 F.3d 75, 96 (5th Cir. 2018) ("The district court was within its discretion to use the food theft as a basis for an upward variance . . . .").

2

No. 18-60700
No. 18-60701

"[e]stablish[] and maintain[] effective relationships with . . . the media to further law enforcement efforts in [his] jurisdiction." The news station's article quotes Freeze saying that the Boltons "were taking over $700,000 of food that was bought for the jail to be used for the inmates in the jail and then diverting that to their own restaurants, and then selling it, preparing it and selling it to their customers." "Freeze could not comment on any ongoing investigation" but explained how the FBI puts cases together and provided a stern warning to those committing crimes in the area.

McDuffie was the Special Agent in Charge of the Criminal Investigation Division of the IRS for the New Orleans Field Office. Among his duties, McDuffie was responsible for "representing Criminal Investigation to the media and public in general." He told the news station that this was "a situation where individuals misus[ed] public or tax payer assets. . . . In this case, foods paid for by the tax payers that were supposed to go into the jail system, but actually found their way into businesses owned by the Boltons." McDuffie also described the IRS's broader mission and provided "strong messages for those who may be breaking the law."

Based on those interviews, the Boltons sued Freeze and McDuffie, in their individual capacities, in state court. The Boltons asserted claims of slander, negligent infliction of emotional distress, and intentional infliction of emotional distress. Under 28 U.S.C. §§ 1442(a) and 2679(d)(2), the U.S. Attorney certified that Freeze and McDuffie were "acting within the scope and course of [their] employment as . . . employee[s] of the Federal government." Accordingly, the United States was substituted by operation of law as the defendant, and it removed the suits to federal district court.

The government moved to dismiss for lack of subject-matter jurisdiction. The district court held that because Freeze and McDuffie were acting within

3

No. 18-60700
No. 18-60701

their scope of employment, the exclusive remedy is against the United States under the Federal Tort Claims Act ("FTCA"). The court then dismissed the suits, because the Boltons never filed an administrative claim, as the FTCA requires. Citing testimony from a Senate Judiciary Committee hearing on the Hillary Clinton email investigation, the Boltons moved for reconsideration, which the district court denied. The Boltons appeal.[2]

## II.

The Westfall Act provides that when a federal employee is sued in state court, the Attorney General ("AG") or his designee may certify "that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." § 2679(d)(2). Once a suit is certified, "the United States shall be substituted as the party defendant," and the suit "shall be removed" to federal district court. *Id.* Additionally, the suit "shall be deemed to be an action or proceeding brought against the United States" under the FTCA. *Id.* An FTCA action cannot proceed "unless the claimant shall have first presented the claim to the appropriate Federal agency." § 2675(a).

Although the AG's or a designee's certification conclusively establishes removal jurisdiction, § 2679(d)(2); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 (1995), certification is judicially reviewable for the purpose of substituting the United States as the defendant, *Gutierrez de Martinez*, 515 U.S. at 434. The plaintiff has the burden of showing "that the defendant's conduct was not within the scope of his or her employment." *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995).

---

[2] On appeal, the Boltons' lawsuits against Freeze (No. 18-60700) and McDuffie (No. 18-60701) have been consolidated.

4

No. 18-60700
No. 18-60701

The Boltons contend that the district court erred in finding that Freeze and McDuffie acted within their scope of employment. We review that legal conclusion *de novo*. *Rodriguez v. Sarabyn*, 129 F.3d 760, 766 (5th Cir. 1997). The Boltons also aver that they have "pled more than adequate facts to entitle them to conduct discovery and uncover additional evidence to demonstrate that [Freeze and McDuffie] were only acting to serve their own interest as private citizens and not in furtherance of their employer." We review the district court's decision to deny limited discovery for abuse of discretion.[3]

## A.

To rebut the government's scope-of-employment certification, "the plaintiff must allege, in either the complaint or a subsequent filing, specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment." *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013) (cleaned up). "[T]here is no right to even 'limited discovery' unless a plaintiff has made allegations sufficient to rebut the Government's certification."[4]

"[T]he burden of proof lies with the plaintiff to show that the [AG's] initial decision was incorrect" based on "the law of the state in which the alleged misconduct occurred." *Palmer v. Flaggman*, 93 F.3d 196, 199 (5th Cir. 1996). For inquiries into whether an employee acted outside the scope of his employment, Mississippi has incorporated the standards of the Restatement (Second) of Agency:

---

[3] *See White v. United States*, 419 F. App'x 439, 443 (5th Cir. 2011); *accord Singleton v. United States*, 277 F.3d 864, 870 (6th Cir. 2002), *overruled on other grounds by Hawver v. United States*, 808 F.3d 693 (6th Cir. 2015); *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1155–56 (4th Cir. 1997).

[4] *Wuterich v. Murtha*, 562 F.3d 375, 386 (D.C. Cir. 2009); *see also White*, 419 F. App'x at 443 (stating that a plaintiff challenging the government's certification "has no right to . . . discovery unless and until she alleges facts that plausibly suggest [the defendant] acted outside the scope of her employment").

No. 18-60700

No. 18-60701

(1) Conduct of a servant is within the scope of employment if, but only if:

   (a) it is of the kind he is employed to perform;

   (b) it occurs substantially within the authorized time and space limits;

   (c) it is actuated, at least in part, by a purpose to serve the master, and

   (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Commercial Bank v. Hearn*, 923 So. 2d 202, 208 (Miss. 2006) (quoting RESTATEMENT (SECOND) OF AGENCY § 228 (1958)).

The Boltons audaciously characterize Freeze's and McDuffie's interviews as "similar to a late-night guest appearance on Jay Leno" and contend that "[g]oing on tell-all type interviews, something similar to writing a tell-all book, is not kind of acts IRS and FBI agents are employed to perform." That characterization, however, bears no resemblance to the facts alleged in the pleadings or the news article they have attached. Freeze and McDuffie were instructed to engage with the media on behalf of their respective agencies as part of their jobs. And none of the facts alleged indicates that the interviews were not "actuated, at least in part, by a purpose to serve the" FBI and IRS. *Id.*

The Boltons also assert that "slander is not something is not something [*sic*] the master would either expect an agent would say or something which would serve the master." But—even if Freeze's and McDuffie's statements were slanderous—that doesn't necessarily mean that they weren't within the scope of employment. Freeze's and McDuffie's alleged conduct was, at a minimum, "incident to the authority expressly conferred" to communicate with the

6

No. 18-60700
No. 18-60701

media.[5]

The Boltons' contention that tortious conduct is inherently outside the scope of employment is untenable. As the district court explained, "If a tort committed during conduct otherwise within the scope of a government agent's duties were construed as falling outside the agent's duties, it would completely abrogate the personal immunity granted by 28 U.S.C. § 2679." The proper inquiry is whether the interview was conducted in the course of employment, not whether Freeze or McDuffie committed a tort during the interview.

B.

To support their contention that the district court erred in denying them scope-of-employment discovery, the Boltons rely on *Stokes v. Cross*, 327 F.3d 1210 (D.C. Cir. 2003). In *Stokes*, the plaintiff, a police officer for the Government Printing Office, alleged that several of his fellow employees deliberately failed properly to investigate allegations that he had not provided his subordinate with necessary assistance in dealing with a trespasser. Because Stokes plausibly alleged that his co-workers acted contrary to their employer's interest when they attempted to prevent the best candidate from receiving the promotion at issue, the court held that the district court should have allowed scope-of-employment discovery. In contrast, the Boltons identify no personal interests served by the agents' statements to the media. Nor do they explain how the depositions and document discovery that they demand are calculated to produce relevant evidence.[6] Because the Boltons have not alleged any facts

---

[5] *Scott-Burr Stores Corp. v. Edgar*, 177 So. 766, 768 (Miss. 1938) (holding that store manager's allegedly "slanderous words" regarding customer's theft were within the scope of his employment despite instructions "expressly forbidd[ing]" him from "accus[ing] [a customer] of stealing").

[6] *Cf. Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000) (stating that the plaintiff has the burden of submitting "specific evidence or the forecast of specific evidence

No. 18-60700
No. 18-60701

that, taken as true, plausibly suggest that Freeze or McDuffie acted outside the scope of his employment, they have no right to even limited discovery.

### C.

In their reply brief, the Boltons aver for the first time that denying their request for limited discovery "contradicts the spirit of the Federal Rules of Civil Procedure." We do not consider that contention, however, because "[a]rguments raised for the first time in a reply brief are waived." *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) (citation omitted).

### III.

The Boltons assert that testimony from a Senate Judiciary Committee hearing on the Hillary Clinton email investigation provides a proper ground for reconsideration. "A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (cleaned up). We review the denial of Rule 59(e) motions for reconsideration for abuse of discretion. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 184 (5th Cir. 2018).

The Boltons' "new evidence"—in their words—is testimony on the "policies and norms of the Department of Justice," "including the topic of unauthorized contact with the media and prohibited statements and commentary to the media about uncharged conduct." That testimony, however, does not entitle the Boltons to discovery as to the scope of Freeze's and McDuffie's duties, because the Boltons still have not "allege[d] facts that plausibly suggest

---

that contradicts the [AG's] certification decision, not mere conclusory allegations and speculation." (internal quotation marks omitted))

No. 18-60700
No. 18-60701

[Freeze or McDuffie] acted outside the scope of h[is] employment." *White*, 419 F. App'x at 443.

The Boltons do not dispute that Freeze and McDuffie were instructed to engage with the media as representatives of the FBI and IRS, respectively. "Extensive precedent makes clear that alleging a federal employee violated policy or even laws in the course of her employment—including specific allegations of defamation or of potentially criminal activities—does not take that conduct outside the scope of employment." *Smith v. Clinton*, 886 F.3d 122, 126 (D.C. Cir. 2018) (per curiam) (collecting cases). "The proper inquiry focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf." *Id.* at 126–27 (cleaned up). Even if parts of what Freeze and McDuffie discussed violated agency policy, providing the interview was still within the scope of their employment. Accordingly, the testimony from the Senate committee hearing does not provide a basis for reconsideration, much less constitute a "manifest error of law or fact." *Schiller*, 342 F.3d at 567.

In sum, the offending statements were in the scope of the defendants' employment, and reconsideration was not warranted by any supposed additional evidence. The judgment of dismissal is AFFIRMED.